**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-0671-WJM-GPG

PATRICIA CUERVO,

    Plaintiff,

v.

DEVAN M. SALAZAR, Deputy, Eagle County Sheriff's Office,
TODD SORENSON, Captain, Mesa County Sheriff's Office,
TRAVIS CHRISTENSEN, Sergeant, Mesa County Sheriff's Office,
MARCO MONTEZ, Sergeant, Mesa County Sheriff's Office,
TIM ORR, Sergeant, Mesa County Sheriff's Office,
JENNA REED, Investigator, Mesa County Sheriff's Office,
ERIC OLSON, Investigator, Mesa County Sheriff's Office,
CURTIS CALLOW, Deputy, Mesa County Sheriff's Office,
DONALD LOVE, Deputy, Mesa County Sheriff's Office,
SETH PARKER, Deputy, Mesa County Sheriff's Office,
THOMAS STUCKENSCHNEIDER, Deputy, Mesa County Sheriff's Office,
JOSH SANCHEZ, Deputy, Mesa County Sheriff's Office,
RYAN REASONER, Deputy, Mesa County Sheriff's Office,
GARTH COWLEY, Deputy, Mesa County Sheriff's Office,
SALMINEO ESPINDOLA, Deputy, Mesa County Sheriff's Office,
DEVRIN SANDELL, Deputy, Mesa County Sheriff's Office,
MIKE MILLER, Investigator, Mesa County Sheriff's Office,
JAMIE PENNAY, Sergeant, Mesa County Sheriff's Office,
DAVID ARCADY, Commander, Grand Junction Police Department,
CHRIS KOPP, Officer, Grand Junction Police Department,
THOMAS RAYSIDE, Officer, Grand Junction Police Department,
DAVID GODWIN, Officer, Grand Junction Police Department,
PATRIC BRIDGE, Officer, Grand Junction Police Department, and
JACOB EDMISTON, Officer, Grand Junction Police Department,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

---

Before the Court are: (1) Motion to Dismiss Plaintiff's Complaint from Defendant

Devan M. Salazar ("Salazar Motion") (ECF No. 70); (2) Mesa Defendants'[1] Motion to Dismiss Plaintiff's Complaint ("Mesa Motion") (ECF No. 81); and (3) Grand Junction Officers'[2] Motion to Dismiss Pursuant to 12(b)(6) ("Grand Junction Motion") (ECF No. 100).[3]  For the following reasons, the Motions are granted.

## I. BACKGROUND

### A.    Allegations in the Complaint[4]

On the evening of March 11, 2018, Sergeant Tim Orr and Deputy Josh Sanchez of the Mesa County Sheriff's Office ("MCSO") followed up for the Eagle County Sheriff's Office on a report of a stolen 1982 Tucker Model 534-A Snow Cat ("Sno-Cat"),[5] which is a tracked vehicle with an overall length of 16' 3", width of 8', height of 7' 5", and weight between 5,050 and 5,350 pounds.  (¶¶ 29, 30.)  Sergeant Orr and Deputy Sanchez rang the doorbell at 1867 S Deer Park Circle, Grand Junction, Mesa County, Colorado (the "Property"), but they did not announce any authority to enter.  (¶ 29.)  No one answered the door.  (*Id.*)

---

[1] Defendants Todd Sorenson, Travis Christensen, Marco Montez, Tim Orr, Jenna Reed, Eric Olson, Curtis Callow, Donald Love, Seth Parker, Josh Sanchez, Thomas Stuckenschneider, Ryan Reasoner, Garth Cowley, Salmineo Espindola, Devrin Sandell, Mike Miller, and Jamie Pennay are the "Mesa Defendants."  (ECF No. 81 at 1.)

[2] Defendants David Arcady, Chris Kopp, Thomas Rayside, David Godwin, Patric Bridge, and Jacob Edmiston are the "Grand Junction Defendants."  (ECF No. 100 at 2.)

[3] To collectively refer to all of the Defendants named in this action, the Court uses the term "Defendants."

[4] The Background is drawn from the Complaint.  (ECF No. 1.)  The Court assumes the allegations contained in the Complaint to be true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Citations to (¶ __), without more, are references to the Complaint.  (ECF No. 1.)

[5] The Complaint spells Snow Cat multiple ways, including Snow Cat and Sno-Cat.  (¶¶ 29, 30.)  The parties predominantly use the latter spelling, and so will the Court.

2

At 9:32 p.m., Deputy Devan M. Salazar of the Eagle County Sheriff's Office obtained a search warrant to look for the Sno-Cat at the Property. (¶¶ 31, 33.)

Cuervo alleges that the search warrant authorized searching the Property for:

> [a] 1982 Tucker Model 534-A Snow Cat with OHV Sticker 4081V / VIN #3823562. The snow cat is orange in color with the numbers 01 in black with white trim on each door. On the right rear side of the Sno Cat is a tool box. On the tool box near the rock in blue lettering and while trim is the name "Mother Tucker". On the bottom of the tool box is a blue stripe with white stars. The Colorado State flag is painted on the engine hood, There is a chrome placard on the right side of the engine hood with the words ["]Tucker SNO-CAT".

(¶ 33.) Allegedly, "Orr and . . . others" decided to enlist the assistance of the MCSO and Grand Junction Police Department ("GJPD") SWAT team to execute the search warrant. (¶ 32.) Cuervo alleges that although law enforcement had a thermal imaging unit which would have confirmed that the only living heat source in the Property was a dog, at approximately 10:36 p.m., the MCSO SWAT team prepared to "hit" the residence by firing chemical weapons into the structure. (¶ 34.) At 10:43 p.m., the GJPD SWAT officers were paged to assist, and at 11:46 p.m., they "mov[ed] in" to "assault the residence at [the Property]." (¶ 35.)

Cuervo alleges that although the search warrant did not comply with the requirements of a "no knock" warrant under Colorado law, Colo. Rev. Stat. § 16–3–303(4), the SWAT team did not "knock and announce." (¶ 36.) In addition, although there was no threat of physical force from anyone in the residence at the Property that would justify the use of physical force, including chemical weapons, under Colo Rev. Stat. § 18–1–707, "numerous chemical shells were fired into the residence at [the Property] by the Defendants . . . ." (¶ 37.)

3

According to Cuervo, "[n]o exigent circumstances supported the use of chemical weapons to breach the premises at [the Property], to enter the residence, or to justify entry into spaces other than the garage to search for the Tucker Sno-Cat." (¶ 31.) Given the size of the Sno-Cat, Cuervo alleges that the only opening in the exterior of the Property capable of permitting the entry of the described subject of the search warrant is the exterior double garage door connecting to the driveway. (¶ 30.)

Cuervo alleges that Deputy Salazar, having obtained the search warrant, *was* aware of the constraints placed upon the search under the warrant and was responsible for its execution. (¶ 39.) However, according to Cuervo, "there is no indication that [Salazar] took any steps to limit the application of force and the scope of the search to actions reasonable under the Fourth Amendment." (*Id.*) Cuervo also alleges that the "incident commander," Captain Todd Sorenson, and the SWAT Operations Supervisor, Sergeant Travis Christensen, were "*presumably* aware of the constraints of the search warrant and responsible for the directions given and information provided, but they did not take steps to limit the application of force and the scope of the search to actions reasonable under the Fourth Amendment." (¶¶ 40, 41 (emphasis added).)

Cuervo asserts identical individual allegations against each Defendant, alleging:

> On March 11, 2018, [name of Defendant] participated in the SWAT execution of the Search Warrant for 1867 S Deer Park Circle in which unreasonable force was directed into the residence, including firing chemical weapons into the residence. In executing the search warrant, areas were entered and searched where the Tucker Sno-Cat, which was the sole subject of the search warrant, could not reasonably be expected to be found.

(¶¶ 42–66.) She alleges that the MCSO and GJPD's reports do not detail which of the Defendants entered beyond the garage at the residence at the Property, nor do they

4

detail which Defendants launched chemical weapons into the structure or otherwise physically damaged the property. (¶ 67.) Finally, she alleges that Defendants used excessive and unreasonable force in executing the search warrant and unlawfully entered areas not authorized by the warrant or exigent circumstances, resulting in actual damage to the structure and furnishings from the impacts and the hazardous chemicals. (¶ 68.) Defendants also allegedly did not secure the structure after their "raid" and left windows and doors unsecure, which resulted in the additional loss of property from looting. (*Id.*)

**B.     Documents Outside the Pleadings**

Salazar attaches the search warrant and affidavit in support of the warrant to the Salazar Motion. (ECF No. 70-2.) Contrary to Cuervo's argument (*see, e.g.*, ECF No. 93 at 2), which is unsupported by any citation to authority, the Court need not convert Defendants' motions to dismiss into motions for summary judgment in order to consider the search warrant here.

Well-settled authority provides that the Court may consider a document outside the pleadings, even in a Rule 12(b)(6) analysis, if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Ramirez v. Hotel Equities Grp.*, LLC, 2019 WL 5964968, at *1 (D. Colo. Nov. 13, 2019) (quoting *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013)). Similarly, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Surat v. Klamser*, 2020 WL 886220, at *4 (D. Colo. Feb. 24, 2020) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006)). "Among those matters of which a court can take judicial notice are 'its own files and records, as well as facts which are a matter of

public record.'" *Id.* (citation omitted).

Cuervo does not challenge the authenticity of the search warrant and affidavit in support of the warrant. (*See* ECF Nos. 93, 105.) Further, the warrant and affidavit are indisputably central to Cuervo's claims. Because Cuervo refers to the search warrant numerous times in the Complaint, the Court may consider it in ruling on Defendants' motions to dismiss. *See Boudette v. Sanders*, 2019 WL 3935168, at *8 (D. Colo. Aug. 19, 2019) (considering documents submitted with motion to dismiss without converting the motion to a motion for summary judgment) (citing *Eckert v. Dougherty*, 658 F. App'x 401, 404 (10th Cir. 2016) (court took judicial notice of warrant application and search warrant even though the documents were not submitted by the plaintiff while conducting a *de novo* review of a motion to dismiss based on qualified immunity); *Rathbun v. Montoya*, 628 F. App'x 988, 990 n.2 (10th Cir. 2015) (considering motion to dismiss based on qualified immunity *de novo* and drawing "facts from the search warrant and the affidavit in support of the search warrant, both of which are referenced in the amended complaint." (citation omitted))).

In the affidavit in support of the warrant, Deputy Salazar recounts that security footage from the parking lot where the Sno-Cat was last seen showed a truck pulling a trailer carrying the Sno-Cat. (ECF No. 70-2 at 3.) Further, in response to law enforcement posting photos of the stolen Sno-Cat on social media, various individuals reported seeing a tan Toyota Tacoma pulling a trailer with the Sno-Cat on it, covered with tarps. (*Id.*) One citizen reported seeing the trailer backed up to the garage at the Property, though she did not see the truck or the Sno-Cat. (*Id.* at 4.)

Deputy Salazar conducted research in a law enforcement database and

6

discovered the owner of the Property was Patricia Ann Cuervo.  (*Id.*)  Further, Deputy Salazar found a possible suspect to be Jason Donald Cuervo.[6]  Deputy Salazar also found a vehicle matching the description of the suspect vehicle (the tan Toyota Tacoma) registered to Jason Cuervo at the Property.  (*Id.*)  Later, Deputy Sanchez advised Deputy Salazar that the trailer was backed up to the garage and was a 100% match to the stolen trailer in this case.  (*Id.* at 5.)  Sergeant Orr sent digital images to Deputy Salazar.  (*Id.*)

Sergeant Orr and his team attempted to make contact with the residents of the home but were unsuccessful.  (*Id.*)  In addition, Sergeant Orr advised someone was inside the residence but refused to answer the door.  According to Deputy Salazar, Sergeant Orr and state law enforcement would hold the residence as they waited for a search warrant.  (*Id.*)

On March 11, 2018, Judge Rachel Olguin-Fresquez of the County Court of Eagle County, Colorado, issued a search warrant, authorizing a search for the following described property:

> 1982 Tucker Model 534-A Snow Cat with OHV Sticker 4081V / VIN #3823562.  The snow cat is orange in color with the numbers 01 in black with white trim on each door.  On the right rear side of the Sno Cat is a tool box.  On the tool box near the lock in blue lettering and white trim is the name "Mother Tucker".  On the bottom of the tool box is a blue stripe with white stars.  The Colorado State flag is painted on the engine hood.  There is a chrome placard on the right side of the engine hood with the words "Tucker SNOCAT".

---

[6] Jason Cuervo is undisputedly Plaintiff Patricia Cuervo's son.  In the Salazar Motion, Salazar asserts that the Court may also consider the fact that Jason Cuervo "ultimately entered a guilty plea due to his actions surrounding the theft of the Sno-Cat that was the subject of the search."  (ECF No. 70 at 6 (citing ECF No. 70-1).)  However, the Court declines to consider this information as it is unnecessary to resolve the motions to dismiss.

7

> Believed to be situated on the person, at the place, or in the vehicle known as:
>
> 1867 S Deer Park Circle, Grand Junction, Mesa County, Colorado
>
> The residence is an adobe single family home with a red Spanish tile roof. The garage doors are painted brown with zero windows. The roof of the home is a red tile roof. The numbers 1867 are located to the right of the second garage door below the outside light. The front of the house faces east and the rear of the house faces west.

(*Id.* at 1.)

In addition, the Complaint refers to "[r]eports provided by the Mesa County Sheriff's Office and the Grand Junction Police Department." (¶ 67.) In her response to the Grand Junction Motion, Cuervo attaches a one page After Action Report Completed by the Grand Junction Police Department Commander David Arcady (the "GJPD Report"). (ECF No. 105-3.) Given that the Complaint specifically references the GJPD report, Cuervo *herself* attached the GJPD Report to her response, and no party disputes its authenticity, the Court may also consider the GJPD Report without converting the motions to dismiss into motions for summary judgment.

The GJPD Report explains:

> MCSO reported the residence was secured and the suspect Jason Cuervo . . . was believed to be barricaded in the residence. A search warrant and arrest warrant was completed for the arrest of Cuervo as well as stolen property (Snow Cat - stolen in Eagle County, CO. earlier in the day) by the Eagle County Sheriff's Department.
>
> MCSO Patrol Deputy advised they saw the male in the residence and he would not come to the door, then the deputy advised the location was locked down (meaning no one could come and go from the residence without being contacted). MCSO advised the suspect was in the residence and had access to weapons with a significant

8

> criminal history rising to the level of SWAT.
>
> MCSO called for all the occupants to come out of the residence multiple times and it was audible to the rear of the residence where the GJPD SWAT team was holding positions on the back side of the residence.

(*Id.* at 2.) Following deployment of chemical munitions into the structure and breach of the garage door, MCSO SWAT entered, but the suspect was not inside. (*Id.*)

## C.    Procedural History

On March 10, 2020, Cuervo filed her Complaint, asserting two claims against all Defendants under 42 U.S.C. § 1983 for: (1) unreasonable search in violation of the Fourth Amendment, and (2) deprivation of property in violation of the Fifth Amendment. (ECF No. 1.) She sues Salazar in his individual capacity and all other Defendants in their individual and official capacities.[7] (¶¶ 2–27.)

On August 11, 2020, Salazar filed the Salazar Motion. (ECF No. 70.) On August 21, 2020, the Mesa Defendants filed the Mesa Motion. (ECF No. 81.) On September 11, 2020, Cuervo filed a combined response to the Salazar Motion and the Mesa Motion. (ECF No. 93.) On September 24 and 25, 2020, Salazar and the Mesa Defendants filed their respective replies. (ECF Nos. 97, 99.) On October 9, 2020, the Grand Junction Defendants filed the Grand Junction Motion. (ECF No. 100.) On October 30, 2020, Cuervo filed a response (ECF No. 105), to which the Grand Junction Defendants replied (ECF No. 107).

On November 23, 2020, United States Magistrate Judge Gordon P. Gallagher

---

[7] Cuervo's allegation against Defendant Jamie Pennay is unclear. She alleges claims against him "individually and in his" without finishing the sentence and stating whether she sues him in his official capacity. (¶ 19.) For the purposes of this Order, the Court assumes Cuervo intends to sue Pennay in his individual and official capacities.

9

granted Defendants' motion to stay discovery pending resolution of the motions to dismiss. (ECF No. 112.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual

10

matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS[8]

### A.  Unreasonable Search - Fourth Amendment

#### 1.  Official Capacity Claims

Except as otherwise noted in this Order, Cuervo alleges claims against the Defendants in their individual and official capacities, which, as the Grand Junction Defendants point out in the Grand Junction Motion (ECF No. 100 at 10), implicates municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). However, to the extent Cuervo intends to allege claims of municipal liability under *Monell*, she has failed to do so. The Complaint contains no allegations establishing *Monell* liability under any of the five methods by which a plaintiff may to do so in the Tenth Circuit. *See Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019). Accordingly, Cuervo's claims against Defendants in their official capacities are dismissed without prejudice.

#### 2.  Individual Capacity Claims

To the extent Cuervo brings claims against Defendants in their individual capacities, Defendants argue those claims are barred by qualified immunity.

---

[8] The Mesa Motion incorporates by reference the arguments and legal support in the Salazar Motion. (ECF No. 81 at 2.) The Grand Junction Motion also joins in the "co-Defendants' dispositive motions for the reasons expressed therein. [ECF 70 & 81]." (ECF No. 100 at 4.)

11

      a.    *Qualified Immunity Standard*

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted). "Once the qualified immunity defense is asserted," as Defendants have done here, "the plaintiff bears a heavy two-part burden to show, first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017). "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted). "A plaintiff need not show the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Id.* (internal quotation marks omitted). But "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *City and Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774

12

(2015) (internal quotation marks omitted).

"The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Therefore, a plaintiff may not defeat qualified immunity "simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Nonetheless, the clearly established inquiry "involves more than a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citation omitted).

Because qualified immunity is immunity from suit, rather than a mere defense to liability, *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016), a court may dismiss the case with or without prejudice if it finds that a defendant is subject to qualified immunity. *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

      b.    *Analysis*

Cuervo brings a Fourth Amendment claim against Defendants arising from the allegedly unreasonable search of the residence at the Property, which she alleges damaged the real property. (¶¶ 69–70.) The Court will assume, for purposes of this Order only, that Cuervo has adequately pled a Fourth Amendment claim arising from Defendants' search of the Property.

However, before the Court turns to the second prong of the qualified immunity analysis, the Court must underscore the weakness of Cuervo's Fourth Amendment claim against Defendants that has been brought out in the Rule 12 motion practice.

13

Defendants highlight the flaws in Cuervo's allegations of their personal participation, which is "an essential allegation in a § 1983 civil rights action."  *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976).  The Tenth Circuit counsels that "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

Cuervo's bare-bones allegations that Defendants "participated" in an allegedly unreasonable search (¶¶ 42–66), and her even thinner allegations regarding certain Defendants' knowledge of the warrant's contents[9] (¶¶ 39–41), barely pass muster.  In her response brief, Cuervo raises arguments that simply do not apply to the facts of this case, such as the collective knowledge rule (*see* ECF No. 93 at 10; ECF No. 97 at 7; ECF No. 99 at 3), and other arguments which are not supported by the allegations of the Complaint, such as supervisory liability of Deputy Salazar (*see* ECF No. 93 at 6; ECF No. 97 at 6–7; ECF No. 99 at 3).  Should this case proceed further, Cuervo is cautioned to scrutinize Defendants' arguments—some of which the Court finds to be more appropriate for summary judgment, such as the reasonableness of the search[10]—

---

[9] Cuervo's allegations that Sorenson and Christensen were "*presumably* aware of the constraints of the search warrant" are particularly suspect.  (¶¶ 40–41 (emphasis added).)

[10] "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful[.]"  *United States v. Ramirez*, 523 U.S. 65, 71 (1998).  However, property damage caused during the execution of a valid search warrant is not per se unreasonable, as "officers executing search warrants on occasion must damage property in order to perform their duty."  *Dalia v. United States*, 441 U.S. 238, 257 (1979).  The Court should apply the "general touchstone of reasonableness which governs Fourth Amendment analysis" in analyzing the "method of execution of the warrant."  *Ramirez*, 523 U.S. at 71.  Applying that reasonableness standard is a fact-specific inquiry "requir[ing] careful attention to the facts and circumstances of each particular case."  *Gonzales v. Bernalillo Cty. Sheriff's Dep't*, 2017 WL 3208529, at *11 (D.N.M. Apr. 4, 2017), *report and*

in amending her pleading and litigating her case to its conclusion.

Despite the Court's foregoing reservations, having assumed that Cuervo has stated a Fourth Amendment claim, the Court turns to whether she has also satisfied the second prong of the qualified immunity analysis: whether the constitutional right was clearly established at the time of the Defendants' allegedly unlawful conduct.

Defendants argue that Cuervo has failed to demonstrate that they acted in contravention of clearly established law in conducting the search of her property. (ECF No. 70 at 7–8; ECF No. 81 at 6; ECF No. 100 at 7.) Specifically, Defendants argue that "Plaintiff cannot establish the use of chemical agents to clear a home where a felon is believed to be hiding was excessive, unreasonable, or otherwise prohibited by clearly established law." (ECF No. 70 at 7.)

In response, Cuervo argues "clearly established law provided that that [*sic*] search warrant could not authorize entry or inspection of spaces within that residence where the Sno-Cat could not be located." (ECF No. 93 at 2.) For support, she cites *United States v. Ross*, 456 U.S. 798, 820–21 (1982), which states:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.[] Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely

---

*recommendation adopted*, 2017 WL 3207798 (D.N.M. May 31, 2017) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

15

> defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

Cuervo also cites, without even a parenthetical explanation as to their relevance,[11] *United States v. Angelos*, 433 F.3d 738, 745–46 (10th Cir. 2006) and *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993).  Generally speaking, these cases stand for the proposition that officers may not exceed the scope of the search warrant.  Moreover, the facts of these cases do not analyze the constitutionality of the alleged destruction of property by chemical agents during law enforcement's attempts to find stolen property, and simultaneously do a protective sweep to locate a suspect—here, Jason Cuervo— believed to be on the property.[12]  Even when reviewed generously, the Court finds these cases do not make "the unlawfulness of the officers' actions apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011).

Nor does *United States v. Ramirez*, which Cuervo cites for the proposition that

---

[11] Should this case proceed further, the Court advises Cuervo that she must do more than simply cite cases and quote passages from cases in support of her arguments.  She must also explain why they bolster her position.

[12] Cuervo argues that the "warrant did not authorize a search for Jason Cuervo." (ECF No. 93 at 3.)  However, the affidavit in support of the warrant and the GJPD Report demonstrate that law enforcement believed that Jason Cuervo or some other unknown individual was in the home at the Property at the time of the search, necessitating a protective sweep. (ECF No. 70-2 at 5; ECF No. 105-3 at 2.)  Cuervo does not suggest that such a belief was unreasonable under these circumstances or refute Defendants' arguments regarding the legality of a protective sweep in this situation. (*See* ECF Nos. 93, 105; ECF No. 70 at 13 (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990) (law enforcement may conduct a "protective sweep" of a residence without a separate search warrant and without probable cause or reasonable suspicion if officers have a reasonable belief the protective sweep is necessary for safety); *U.S. v. Kaylor*, 877 F.2d 658, 664 (8th Cir. 1989); *U.S. v. Brown*, 217 F.3d 605 (8th Cir. 2000); *U.S. v. Barker*, 27 F.3d 1287 (7th Cir. 1994); *U.S. v. Mendoza*, 333 F. Supp. 2d 1155, 1159 (D. Utah 2004)).)

16

the officers' use of "chemical weapons through the close of the residential spaces, where the object of the search warrant could not reasonably be expected to be found" was "unreasonably destructive force" which violated the Fourth Amendment. (ECF No. 105 at 4–5.) *See Ramirez*, 523 U.S. 65 at 71. In *Ramirez*, police broke a window entering a home to search for a prison escapee with a violent past who reportedly had access to a large supply of weapons, conduct which the Supreme Court found was reasonable and did not violate the Fourth Amendment. *See Ramirez*, 523 U.S. at 71. While "the facts of the cases compared need not be identical," such conduct is not "sufficiently analogous to satisfy the particularized context necessary to support liability." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007).

As Defendants explain, Cuervo's arguments regarding qualified immunity are based on a "misunderstanding of the scope of the search warrant." (ECF No. 99 at 5.) As Defendants underscore, Cuervo has not challenged the validity of the warrant. Although Cuervo argues that entry into the home was unreasonable because the Sno-Cat could not be found there, the warrant authorized entry onto the entire property to search for the Sno-Cat and the toolbox. (¶ 33; ECF No. 70-2 at 1.) Moreover the description of the Property on the warrant describes the residence *and* the garage. Even if the validity of the warrant was in question, police officers executing search warrants are entitled to qualified immunity if a reasonable officer would have believed the execution of the warrant did not violate any clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Because Cuervo has not demonstrated that Defendants violated a clearly established right in conducting the search of her property, she has not met her burden

17

to overcome the defense of qualified immunity. Accordingly, Cuervo's Fourth Amendment claim against Defendants in their individual capacities is dismissed without prejudice.

**B.     Deprivation of Property - Fifth Amendment**

Cuervo alleges that "[d]uring the unreasonable search and [F]ourth [A]mendment deprivation of rights, Plaintiff's property was destroyed without due process of law in violation of the Fifth Amendment of the United States Constitution." (¶ 72.)

Defendants argue that Cuervo has failed to establish any Fifth Amendment violation. (ECF No. 70 at 8; ECF No. 81 at 2; ECF No. 100 at 8.) The Court agrees.

The Grand Junction Defendants point out that Cuervo's Fifth Amendment claim is not clearly pled: it is not clear whether she alleges a procedural or substantive due process violation, or a taking. (ECF No. 100 at 8.) While the lack of clarity is undeniable, her claim fails under either iteration.

To the extent Cuervo intends to plead a procedural or substantive due process violation, she cannot bring such a claim against state actors under the Fifth Amendment. The Tenth Circuit has explained that "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen Amendment applies to actions by state governments." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). Here, Cuervo alleges conduct only undertaken by state authorities, and thus there can be no Fifth Amendment claim. *See id.*

To the extent Cuervo intends to plead an unlawful taking under the Fifth Amendment—which is not at all clear from the face of her complaint—her claim similarly fails. In *Lech v. Jackson*, the Tenth Circuit held that actions taken pursuant to the police

18

power—as opposed to the eminent domain power—do not constitute takings. 791 F. App'x 711, 714 (10th Cir. 2019). Here, Cuervo has not alleged that any Defendant's action operated to convert her property to a public use. Instead, Cuervo attempts to distinguish *Lech* by noting that while the force in *Lech* was lawfully applied, the force in her case was not. (ECF No. 93 at 14.) However, as the Grand Junction Defendants point out, she provides no factual or legal support for that conclusion. (ECF No. 100 at 9.) It is undisputed that Defendants were executing a valid warrant on the Property, and even assuming Cuervo's property was damaged, that damage falls within the scope of police power, and outside the takings clause of the Fifth Amendment. *See Lech*, 791 F. App'x at 718 ("the damage caused in the course of arresting a fugitive on plaintiffs' property was not a taking for public use, but rather it was an exercise of the police power"). Therefore, Cuervo's Fifth Amendment claim is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Salazar Motion (ECF No. 70), the Mesa Motion (ECF No. 81), and the Grand Junction Motion (ECF No. 100) are GRANTED as follows:

    a. To the extent Cuervo alleges *Monell* claims, they are DISMISSED without prejudice;

    b. Cuervo's Fourth Amendment claim for unreasonable search against Defendants in their individual capacities is DISMISSED without prejudice;

    c. Cuervo's Fifth Amendment claim for deprivation of property is DISMISSED with prejudice;

2. The stay of discovery ordered by United States Magistrate Judge Gordon P. Gallagher on November 23, 2020 (ECF No. 112) is LIFTED; and

3. By **April 21, 2021**, the parties shall contact the chambers of Judge Gallagher to set a status conference or such other proceeding as Judge Gallagher deems appropriate to move this action forward.

Dated this 19th day of April, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge